SOLOMON E. GRESEN [SBN: 164783]
**RGLAWYERS LLP**
16200 Ventura Blvd., Suite 216
Encino, California 914363
Telephone: (818) 815-2727
Facsimile: (818) 815-2737

Attorneys for Plaintiffs
Mark Moskowitz and

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK R. MOSKOWOTZ, and NANCY PARRIS MOSKOWITZ, husband and wife, <br> Plaintiffs, <br> vs. <br><br> JEFFREY BROOKS, an individual;  CLYDE TURNER, an individual; BLAIR TURNER, an individual; TURNER INVESTMENTS, LTD, a Nevada limited partnership; TSK INVESTMENTS, a Nevada business, form unknown; ALFRED LUCIANI, an individual; SAINTFIELD HOLDINGS LLC, an Alabama limited liability company; and DOES 1-20, inclusive. <br><br> Defendants. | **Case No:** <br><br> **COMPLAINT FOR:** <br><br> **1. VIOLATION OF 42 U.S.C 1981;** <br> **2. VIOLATION OF 42 U.S.C 1985;** <br> **3. VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934;** <br> **4. VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1933;** <br> **5. NEGLIGENCE;** <br> **6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** <br> **7. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;** <br> **8. BREACH OF CONTRACT;** <br> **9. FRAUD AND DECEIT;** <br> **10. DECLARATORY RELIEF;** <br> **11. ACCOUNTING; AND** <br> **12. INJUNCTIVE RELIEF.** <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

COME NOW, PLAINTIFFS Mark Moskowitz and Nancy Parris Moskowitz ("Plaintiffs") who hereby demand jury trial and allege as follows:

## THE PARTIES

1.    Plaintiff Mark Moskowitz (Plaintiff or "Moskowitz") is an attorney at law, licensed to practice in all State and federal Courts in California, though he is retired and has not engaged in the practice of law for more than 12 years.  Plaintiff is disabled, over 76 years old, suffering from cancer, CTE and PTSD, and is an "Elder" as defined by Cal. Penal Code § 368(g).  Since 1990, Plaintiff has been residing at 20580 Northridge Road, Chatsworth, California 91311, and he remains a resident of Los Angeles County, California. Plaintiff Moskowitz and Plaintiff Nancy Parris married in 1984 and are still married today.  At all times relevant, Plaintiff Moskowitz was chairman of the management committee and/or the principal executive officer of Impact Solutions, LLC (hereinafter, "IMSO" or the "Company") which is and was a member managed limited liability company organized and existing under the laws of the State of Delaware, with its headquarters located in the City of Chatsworth, County of Los Angeles, State of California.  IMSO is owned by its members.  The units of ownership are commonly referred to as "shares" or "membership interests," and are regulated as "securities" under the Securities Acts of 1933 and 1934.  The words "shares," "membership interests" and "securities" are used interchangeably hereinbelow.  At all times herein mentioned, Plaintiff Moskowitz owned ninety-six (96) fully diluted shares of IMSO.

2.    Plaintiff Nancy Parris Moskowitz (Plaintiff or "Parris") has been residing with her husband in Chatsworth, California since 1990, and is a resident of Los Angeles County, California.  Plaintiff is 70 years old and is an "Elder" as defined by Cal. Penal Code § 368(g). Plaintiffs Moskowitz and Parris have been husband and wife since 1984.

3.    Defendant Jeffrey Brooks (Defendant, or "Brooks") is a resident of Birmingham, Alabama, and at all times herein mentioned, was the managing member of Defendant Saintfield Holdings, LLC. In October, 2018, Defendant Brooks transferred to his company, Defendant Saintfield Holdings, LLC, a total of six (6) shares of IMSO for $100,000. Defendant Brooks was a

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Claimant in the 2022 Los Angeles, California, AAA Arbitration proceeding against Plaintiff Moskowitz, Case No. 01-22-0000-5683.

4.    Defendant Saintfield Holdings, LLC (Defendant, or "Saintfield"), is a limited liability company organized by Defendant Brooks under the laws of the State of Alabama, with its principal place of business in Jefferson County, Alabama.  Brooks transferred his six (6) IMSO shares to Defendant Saintfield sometime between October, 2018 and July 1, 2019. At all times herein mentioned, SHLLC acted by and through Defendant Brooks, such that Brooks and SHLLC are inseparably intertwined in this action. Accordingly, any action by Defendant Brooks as alleged herein is also an action of SHLLC, and/or vice versa.

5.    Defendant Clyde Turner (Defendant, or "Turner") is a resident of Las Vegas, Nevada.  Along with Defendants Brooks and Luciani, Defendant Turner was a Claimant in the 2022 Los Angeles, California, AAA Arbitration proceeding against Plaintiff Moskowitz, Case No. 01-22-0000-5683.  At all times herein mentioned, Defendant Turner and Turner Investments, Ltd., jointly owned twenty (20) shares of IMSO, and Turner was one of its managing members.

6.    Defendant Blair Turner (Defendant, or "B. Turner") is a resident of Las Vegas, Nevada, and the son of Defendant Turner.  At all times herein mentioned, Defendant B. Turner owned two (2) shares of IMSO and was one of its members.

7.    Defendant Turner Investment, Ltd. (Defendant, or "TI Ltd."), is and was a limited partnership organized by Defendant Turner under the laws of the State of Nevada.  At all times mentioned herein, TI Ltd. jointly owned twenty (20) shares of IMSO with Defendant Turner.  Further at all relevant times, Defendant TI Ltd. acted by and through Defendant Turner, such that Turner and TI Ltd. are inseparably intertwined in this action.  Accordingly, any action by Defendant Turner as alleged herein is also an action of TI Ltd., and/or vice versa.

8.    Defendant TSK Investment (Defendant, or "TSK"), is and was a business entity, form unknown, organized by Defendant B. Turner under the laws of the State of Nevada.  At all

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

times mentioned herein, TSK owned six (6) shares of IMSO with Defendant Turner.  Further at all relevant times, Defendant TSK acted by and through Defendant B. Turner, such that B. Turner and TSK are inseparably intertwined in this action.  Accordingly, any action by Defendant B. Turner as alleged herein is also an action of TSK and/or vice versa.

9.    Defendant Alfred Luciani (Defendant, or "Luciani")  is an individual residing in the City of Los Angeles, California. Along with Defendants Brooks and Turner, Defendant Luciani was a Claimant in the 2022 Los Angeles, California, AAA Arbitration proceeding against Plaintiff Moskowitz, Case No. 01-22-0000-5683.  At all times herein mentioned, Defendant Luciani and his ex-wife, Arlene, owned a total of 12 shares of IMSO and were members of the Company.

10.    The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES are unknown to Plaintiffs, who therefore sue said defendants by said fictitious names.  Plaintiffs are informed and believe, and thereupon allege, that each of said defendants is negligently or otherwise responsible in some manner for the events and happenings herein referred to, and negligently or otherwise caused injuries and damages proximately thereby to Plaintiffs.  Plaintiffs pray leave to amend this complaint to substitute the specific names of said DOES and to specify their said negligent or tortious acts as they become known.

11.    Plaintiffs are informed and believe and based thereon allege that at all times mentioned herein, all Defendants, and each of them, were the officers, directors, brokers, agents, contractors, advisors, servants, partners, joint venturers, and/or employees of their Co-Defendants, and were acting within the scope of their authority as such agents, contractors, advisors, servants, partners, joint venturers, and employees with the permission and consent of their Co-Defendants. Each Defendant, as aforesaid, was acting as a principal, and was involved in the selection, consultation, and or hiring of each and every other participant in the events relevant herein. Plaintiff is further informed and believe, and based thereon alleges, that the acts and conduct herein

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

alleged of each such Defendants were known to, authorized by and/or ratified by the other
Defendants, and each of them.

## JURISDICTION AND VENUE

12.     The claims made herein are asserted pursuant to the United States Constitution, and
42 U.S.C. §§ 1981, 1983, 1985 and 1986, et seq., the Securities Act of 1934, 17 C.F.R. § 240.10b-
5, and the jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331 and 1343.

13.     Supplemental claims are made herein for Elder Abuse under California Welfare &
Institutions Code §15600 et seq., for Negligence under California Civil Code § 1714, for
Intentional and Negligent Infliction of Emotional Distress under California common law, and for
Unfair Business Practices under California Business & Professions Code § 17200 et seq., and the
jurisdiction of this court is invoked pursuant to 28 U.S.C. 1337.

14.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 and is founded on the fact
that the acts complained of occurred in this district and that Plaintiff's cause of action arose in this
district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15.     Impact Solutions, LLC ("IMSO" or the "Company") was formed in 2016 for the
purpose of developing helmets and headgear for athletes and everyday people to reduce traumatic
brain injuries and other foreseeable head trauma. The Company is governed by a written membership
agreement ("Agreement") that sets forth the rights and responsibilities of its members including,
without limitation, the election of officers and the operation of the business, a true and correct copy of
which is attached, marked as Exhibit **A**, and is incorporated herein by this reference as though fully set
forth at length.

16.     The "Second Amendment" to the Agreement provides, at paragraph 7 and in pertinent
part, "Mark R. Moskowitz and Catalin Tutunaru, who are each co-founders of the company, may be
removed as Managers of the Company only For Cause (as defined below) … 'For Cause' means the

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

following: conviction or pleading no contest to a felony or crime involving moral turpitude or an act of fraud, embezzlement or defalcation causing material economic harm to IS." A true and correct copy of the Second Amendment is attached, marked as Exhibit **B**, and is incorporated herein by this reference as though fully set forth at length.

17.     The Second Amendment also provides, at paragraph 8, that, "Any action required or permitted to be taken by the Management Committee may be taken without a meeting, if such action is unanimously approved in writing by all of the members of the Management Committee, and (ii) such action does not involve any of the following: (i) an issue of compensation of a Manager or a Company officer; (ii) a matter of conduct of a Manager or a Company officer; (iii) a proposed issuance of additional Membership Interests or any option or other right to purchase a Membership Interest; (iv) any proposed amendment of this Agreement undertaken by the Management Committee in accordance with Section 11.9; or (v) any other matter as so determined by the Chairman in his sole discretion." (Ex. **B**.)

18.     Attached hereto as Exhibit **C** is a true and correct copy of the Company's PRO-FORMA CAPITALIZATION TABLE ("Pro Forma") of July 1, 2019, prepared by the Chief Financial Officer which was filed with the Company's State and Federal taxes, which are incorporated herein by this reference as though fully set forth at length. The table sets forth "the beneficial holdings of (the 44) persons or entities who (then held) a Membership Interest in Impact Solutions LLC, along with the beneficial holdings of the Management Committee as a group. **As of July 1, 2019, the issued and outstanding ownership and fully diluted interest computations are based upon 227.5 units and 383.5 units, respectively.**" (Emphasis added.)

19.     On March 19, 2020, Governor Gavin Newsom issued a stay at home order to protect the health and well-being of all Californians and to establish consistency across the state in order to slow the spread of COVID-19. The business of IMSO ground to a halt as everyone sheltered in place.

20.     On or about September 30, 2020, Defendants Brooks, Turner, B. Turner, TI Ltd.,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

TSK, Luciani, Saintfield and DOES 1 through 20, and each of them (hereinafter, the "Conspiring Defendants"), conspired and agreed to fraudulently usurp control of the Company by device, scheme, or artifice, using means of interstate commerce (electronic mail). In furtherance of the conspiracy, the Conspiring Defendants, and each of them, made untrue statements of material fact in an emailed spreadsheet purporting to identify 100% of the members of IMSO with corresponding ownership interests. The misrepresentations of material fact include, without limitation, that **the issued and outstanding membership interest computations are based upon 169.5 total units, held by twenty-seven (27) members**. A true and correct copy of the October 2, 2020, fraudulent spreadsheet and email is attached, marked as Exhibit **D** and is incorporated herein by this reference as though fully set forth at length.

21. The true facts were that as of October 2, 2020, the Company's records showed that the issued and outstanding ownership interests totaled 227.5 units and 383.5 units, respectively, held by forty-eight (48) members, as set forth in the Pro Forma (Exhibit **C**). Each member received a copy of the July 1, 2019 Pro Forma (Exhibit **C**), including without limitation the Conspiring Defendants, and each of them, such that the Conspiring Defendants, and each of them, had constructive or actual knowledge of the falsity of the calculations contained in the October 2, 2020 fraudulent spreadsheet (Exhibit **D**).

22. Thereafter, in furtherance of the conspiracy, the Conspiring Defendants, and each of them purported to remove Plaintiff Moskowitz as the executive/managing member by way of Written Consent ("Resolution") in Lieu of a Special Meeting of the Members. A true and correct copy of the Resolution is attached, marked as Exhibit **E**, and is incorporated herein by this reference as though fully set forth at length. However, the Conspiring Defendants, and each of them, did not have enough votes to take any action under the express terms of the Membership Agreement (Ex. **A**), as amended, which required fifty percent (50%) approval of the members for most actions other than removal of officers and amendments to the Agreement. (See Second Amendment; Ex. **B**.)

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

23.    The Conspiring Defendants, and each of them, were part of a group of ten (10) Members that untruthfully claimed a combined 52.51% total percentage interest in the Company based upon the erroneous 169.5 total units in the fraudulent Spreadsheet instead of the 227.5 units in the Pro Forma. (See Conspiring Defendants' AAA Brief, a true and correct copy of which is attached, marked as Exhibit **E**, and is incorporated herein by this reference as though set forth at length.)

24.    The chart on page 7 of the AAA Brief (Ex. **E**), reproduced below, identifies the members who purportedly were in favor of removing Plaintiff Moskowitz, along with the Percentage Interest claimed by the Conspiring Defendants, and each of them, for each Member. The chart below has been modified to include the True Percentage Interest taken from the Pro Forma (Ex. **C**)

| Member | Percentage Claimed (Ex. **D**.) | True Percentage (Ex. **C**.) |
|---|---|---|
| Alan Pizzitola | 3.54% | 2.0 |
| T. Karlton Jackson | 3.54% | 2.6 |
| Blair Turner | 1.18% | .9 |
| TSK Investments | 3.54% | 2.6 |
| Turner Investments | 9.44% | 6.6 |
| David Thrasher | 3.54% | 2.6 |
| Wayne Gillis | 3.54% | 2.6 |
| Arlene Luciani | 4.13% | 5.3 (incl. Alfred Luciani) |
| Catalin Tutunaru | 11.8% | 13.0 |
| Val Serebryany | 8.26% | 6.2 |
| Total | 52.51% | 44.40% |

25.    The true facts were that the Conspiring Defendants, and each of them, made material misrepresentations of fact in the Fraudulent Spreadsheet (Ex. **D**) by understating the total membership interests by 25.5%, or by 58 of the 227.5 "owned units" set forth in the Pro Forma (Ex. **C**). As a result, with the support of only 44.4% of the "owned units," the Conspiring Defendants did not have

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

the requisite "Majority Interest" in the Company to oust Moskowitz and amend the Membership Agreement. "Majority Interest" is defined in the Membership Agreement and "means one or more Percentage Interests of Members that, taken together, exceed fifty percent (50%) of the aggregate of all Percentage Interests." Without a Majority Interest, then, Conspiring Defendants lacked authority to take action. They did it anyway, and began taking acts and actions to conduct the business of the Company including, without limitation, removing Plaintiff Moskowitz, making material misrepresentations on behalf of the Company in documents submitted to its members and state and federal taxing authorities, encumbering the Company, and filing and settling lawsuits on behalf of the Company. They also purported to have adopted a Fifth Amendment to the membership agreement, a true and correct copy of which is attached, marked as Exhibit **F**, and is incorporated herein by this reference as though fully set forth at length.

26.    Even if Conspiring Defendants, and each of them, had or controlled enough votes to carry the day (which they did not), the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**) were both *void ab initio* because the Conspiring Defendants, and each of them, failed to comply with the express terms of the Membership Agreement (Ex. **A**) as amended in taking such actions. Specifically, without limitation and among other things, the Conspiring Defendants, and each of them:

(a)    Purported to act to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended. (See Second Amendment; Ex. **B**.)

(b)    Purported to act to remove Plaintiff Moskowitz as Managing Member without notice or meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended. (See Second Amendment; Ex. **B**.)

(c)    Purported to amend the terms of the Membership Agreement without notice or or meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended. (See Second Amendment; Ex. **B**.)

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

(d)     Failed to obtain the unanimous approval in writing by all of the members of the Management Committee before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended. (See Second Amendment; Ex. **B**.) Plaintiff Moskowitz, the head of the Management Committee, was never given notice of the proposed action and did not approve of acting without a meeting.

27.     For these reasons, among others below, the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**) were void and inoperative at the inception, as if both never existed. Nevertheless, the Conspiring Defendants, and each of them, purported to take control of the Company and engaged in acts of operating the Company, all of which was fraudulent and in violation of the Membership Agreement, as amended.

28.     In response, on April 21, 2021, the Company filed an action against the Conspiring Defendants, and each of them among others, in the Los Angeles Superior Court, Central District, LASC Case No.: 21STCV15143 (the "IMSO Lawsuit") which was assigned to the Honorable Monica Bachner, Judge; Dept. 71; Trial Date: October 23, 2023. A true and correct copy of the IMSO Lawsuit is attached, marked as Exhibit **G**, and is incorporated herein by this reference as though fully set forth at length. The IMSO Lawsuit was brought against the Conspiring Defendants and others for the purpose of obtaining an injunction, damages, and a judicial determination of the percentage ownership of each and every member of the Company for the purpose of resolving the above-described dispute.

29.     On June 14, 2021, and in furtherance of the conspiracy, Defendant Brooks and DOES 1-20, and each of them (the "Brooks Defendants") ignored the IMSO Lawsuit and surreptitiously filed a duplicitous complaint in the Circuit Court in Jefferson County, Alabama, Jefferson County Case No. 01-CV-2021-901734.00 (the "Alabama Lawsuit"), on behalf of Saintfield Holdings, LLC, against Moskowitz for causes including securities violations, intentional and negligent misrepresentation (fraud), and breach of fiduciary duty in the sale of six (6) membership interests by IMSO to the Brooks Defendants. A true and correct copy of the Alabama Lawsuit is attached, marked as Exhibit

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**H**, and is incorporated herein by this reference as though fully set forth at length. On page 2 of the Alabama Lawsuit, at para. 13, the Brooks Defendants, and each of them, made a material misrepresentation of fact, claiming to have purchased over $1,000,000 of IMSO stock. The true facts were that the Brooks Defendants, and each of them, purchased their six (6) total shares of IMSO for the sum of $100,000 from Defendant Turner, and DOES 1 through 20, and each of them, and Moskowitz had nothing to do with it.

30. On June 23, 2021, the parties to the IMSO lawsuit agreed to an early mediation and to stay the proceedings for 90 days or as otherwise necessary for the mediation. The Company agreed to mediate with Judge Jennifer Toglioti (Ret.), who was highly recommended by defense counsel as an experienced and effective mediator. The mediation was scheduled for October 1, 2021, and was hosted virtually on the mediator's chosen website. A true and correct copy of the emailed notice from Judge Toglioti is attached, marked as Exhibit **I**, and is incorporated herein by this reference as though fully set forth at length. The Conspiring Defendants, and each of them, participated in the mediation, though the parties were unable to come to a mutual agreement re settlement.

31. Before the mediation, however, in August of 2021, the Books Defendants, and each of them, pushed ahead with the Alabama Lawsuit as if no mediation had been scheduled. Unbeknownst to Plaintiff Moskowitz, the Brooks Defendants, and each of them, unscrupulously served Plaintiff Moskowitz by obscure publication without notice to Plaintiff, as required by law, and thereafter obtained a default judgment against him for over $1,000,000 based on the untruthful facts contained in the Alabama Lawsuit. Plaintiff had no actual notice of the lawsuit or its claims, which prevented him from participating in the litigation.

32. On or about March 11, 2022, the Conspiring Defendants, and each of them, initiated a proceeding in Los Angeles, California -- a AAA Arbitration proceeding against Plaintiff Moskowitz, Case No. 01-22-0000-5683. A true and correct copy of the demand for arbitration is attached, marked as Exhibit **J**, and is incorporated herein by this reference as though fully set forth at length. The

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

agreement to arbitrate is found at Article VIII in the Membership Agreement, on pp. 24-25. (Ex. **A**.) The agreement to arbitrate is draconian and would be unenforceable at law. Even so, the Conspiring Defendants, and each of them, along with AAA and its arbitrators, failed to abide by the express terms of the agreement. The timing and selection of arbitrators was supposed to be completed in 30 days, max, and the hearing was to be ten (10) days later. Instead, the hearing was on September 12, 2022, six (6) months later, in violation of the agreement to arbitrate. Because the Conspiring Defendants, and each of them, were in breach of the agreement to arbitrate, they are unable to enforce it against Plaintiff, who did not participate in the process after Conspiring Defendants were in breach and did not attend the hearing.

33.    The March, 2022, AAA arbitration was brought by the Conspiring Defendants, and each of them, "for a declaration of the validity of the October 2020 amendment to the OA, and of the votes to remove Mr. Moskowitz as a manager, and to appoint the current membership committee." (Ex. **J**, p.3.) This claim for declaratory relief raises the exact same issues for which IMSO sought relief in its April, 2021 lawsuit against the Conspiring Defendants and others. The Conspiring Defendants ought to have filed a cross-complaint on these issues, which is compulsory under Section 426.30 of the Code of Civil Procedure. If a party fails to allege related cause of action against plaintiff in cross-complaint, "such party may not thereafter in any other action assert against the plaintiff the related cause of action not plead" (Id.) They tried to avoid this by excluding IMSO from the arbitration, though IMSO is a necessary party in any action to determine the ownership of its membership interests. The failure to include IMSO as a necessary party to the litigation, in the absence of any other cause, renders the arbitration award unenforceable.

34.    The October 28, 2022, arbitration award ("Award") is attached, marked as Exhibit **K**, and is incorporated herein by this reference as though fully set forth at length. Once again, the AAA arbitrators violated the agreement to arbitrate by seeking to arbitrate claims outside of the agreement, and thereafter failing to produce a decision within thirty (30) days of the hearing. Evidence submitted

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

by the Conspiring Defendants, and each of them, included the Membership Agreement (Ex. **A**), the Second Amendment (Ex. **B**), the Resolution (Ex. **E**), the Fifth Amendment (Ex. **F**), and the October 2, 2020, fraudulent Spreadsheet and emails (Ex. **D**). The arbitrators held that "the Fifth Amendment to the Agreement (Ex. **F**) and the Resolution (Ex. **E**) constitute a valid amendment to the Agreement and as a result Mark R. Moskowitz was properly removed from his position on the Management Committee, as Chairman and as an Officer of Impact Solutions LLC." The Award, however, was obtained by fraud in an arbitration that was not conducted in accordance with the agreement to arbitrate.

35.    Nevertheless, on November 23, 2022, the Conspiring Defendants, and each of them, filed an action in Los Angeles Superior Court to confirm the award of the arbitrators, LASC Case No. 22STCP04179, a true and correct copy of the Petition is attached, marked as Exhibit **L**, and is incorporated herein by this reference as though fully set forth at length. In addition to other remedies, Plaintiff Moskowitz is seeking injunctive relief and/or to quash the confirmation of the arbitration award, and to regain his management role in the Company along with the Company's records and intellectual property.

36.    Furthermore, the Brooks Defendants, and each of them, aided by the remaining Conspiring Defendants, filed an action in California to enforce the fraudulent $1,000,000 "sister state" judgment from the Alabama Lawsuit, LASC Case No. 22CHCP00096, a true and correct copy of which is attached, marked as Exhibit **M**, and is incorporated herein by this reference as though fully set forth at length. Thereafter, on October 14, 2022, the Conspiring Defendants, and each of them, conspired to and did file a Notice of Levy under Writ of Execution against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home so it could be sold to satisfy the fraudulent $1,000.000 judgment. A true and correct copy of the Notice of Levy is attached, marked as Exhibit **N**, and is incorporated herein by this reference as though set forth at length. In addition to other remedies, Plaintiffs are seeking injunctive relief and/or to quash the fraudulent judgment

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

obtained in secret in Alabama.  The sale is set for June 6, 2023.

**FIRST CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1981**
**CONSPIRACY FOR DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**
(*All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.*)

37.     Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the First Cause of Action, as though fully set forth at length.

38.     42 U.S.C, section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …" (Section 1981(a).)   "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (Section 1981(b).)   "The rights protected by this section are protected against nongovernmental … impairment under color of State law." (Section 1981(c).)

39.     The Conspiring Defendants, and each of them, conspired to impair and deprive Plaintiff Moskowitz of the enjoyment of all benefits, privileges, terms, and conditions of his contractual relationship with IMSO as expressly set forth in the Membership Agreement (Ex. **A**), as amended (Ex. **B**).  In furtherance of this conspiracy, the Conspiring Defendants, and each of them, impaired Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, by way of example and not by way of limitation, by: (a) acting to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (b) purporting to amend the terms of the Membership Agreement without notice to Plaintiff and without a formal meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (c) failing to obtain the unanimous approval in writing by all of the members of the Management Committee before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended (See Second Amendment; Ex. **B**.); and (d)

intentionally overstating the percentage interest owned or controlled by the Conspiring Defendants as described above (Ex. **D**), the actual and true total of 44.4% was insufficient to prevail under the Agreement.

40.    The Conspiring Defendants, and each of them, under color of law, also conspired to impair and deprive, and did impair and deprive Plaintiff Moskowitz of the full and equal benefit of the law, without limitation, by: (a) making a material misrepresentation of fact to the Alabama Circuit Court to obtain a judgment of over $1,000,000 when the true facts were that the Brooks Defendants, and each of them, purchased their six (6) total shares of IMSO for the total investment of $100,000; (b) proceeding in a AAA arbitration proceeding in Los Angeles, California, against Plaintiff Moskowitz instead of filing a mandatory cross-complaint in the IMSO Lawsuit in violation of Section 426.30 of the Code of Civil Procedure; (c) proffering fraudulent testimony and evidence at the AAA arbitration hearing that that members owning 52.51% of the 169.5 total membership interests (Ex. **D**) in the Company supported the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**), when the true facts were that those members held 44.4% of the 227.5 total membership interests (Ex. **C**) which was not enough to support their actions; (d) filing an action in Los Angeles Superior Court to confirm the arbitration award under color of law when they knew the award was based on the above material misrepresentations of fact (Ex. **L**); and (e) filing an action in California to enforce the fraudulent $1,000,000 "sister state" judgment from the Alabama Lawsuit under color of law, and based thereon conspired to and did file a Notice of Levy under Writ of Execution (Ex. **M**) against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home on June 6, 2023, so it could be sold to satisfy the fraudulent $1,000.000 judgment (Ex. **N**).

41.    As a direct result of the aforesaid conspiracy and the acts and omissions of the Conspiring Defendants, and each of them, as set forth above at length and incorporated herein by this reference as though fully set forth at length, Plaintiff Moskowitz and Plaintiff Parris have

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

42.    As a direct, foreseeable and proximate result of the aforesaid acts and omissions by the Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

43.    In performing the acts hereinbefore alleged, the Conspiring Defendants, and each of them, conspired to act and acted intentionally to injure Plaintiff; and further their conduct was despicable and performed with malice or a willful and conscious disregard of Plaintiff's civil rights such that punitive or exemplary damages are warranted.

44.    By virtue of their conspiracy and acts in furtherance of the conspiracy to unlawfully remove Moskowitz as the executive of IMSO and also to deprive Plaintiffs of their home under color of law in violation of Section 1981, as hereinabove described, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction against the Conspiring Defendants, and each of them, which would prohibit the Conspiring Defendants from enforcing or attempting to enforce the Notice of Levy under Writ of Execution (Ex. **N**) or otherwise attempting to levy on Plaintiffs' assets, or otherwise to enforce or execute on the Alabama judgment against Plaintiffs in any manner, whatsoever, and also to prohibit the enforcement of the arbitration Award (Ex. **K**) that purportedly awarded the Conspiring Defendants control of the Company.

### SECOND CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. 1985
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
(*All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.*)

45.    Plaintiffs incorporate by this reference paragraphs 1 through 36 of this

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

complaint into the Second Cause of Action, as though fully set forth at length.

46.     42 U.S.C, section 1985 provides, in pertinent part, that it is unlawful for "two or more persons (to) conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property" (Section 1985(2).)  "[I]f one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." (Section 1985(3).)

47.     The Conspiring Defendants, and each of them, conspired to injure and did injure Plaintiff Moskowitz and Plaintiff Nancy Parris in their person and property, by impeding, hindering, obstructing, or defeating the due course of justice, with intent to deny them the equal protection of the laws, as fully explained above.

48.     In furtherance of this conspiracy, the Conspiring Defendants, and each of them, injured plaintiffs in their person and property, by way of example and not by way of limitation, by: (a) acting to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (b) purporting to amend the terms of the Membership Agreement without notice to Plaintiff and without a formal  meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (c) failing to obtain the unanimous approval in writing by all of the members of the Management Committee before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended (See Second Amendment; Ex. **B**.); and (d) intentionally overstating the percentage interest owned or controlled by the Conspiring Defendants as described above (Ex. **D**), the actual and true total of

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

44.4% was insufficient to prevail under the Agreement.

49.    The Conspiring Defendants, and each of them, also conspired to impede, hinder, obstruct, or defeat the due course of justice in California, with intent to deny to Plaintiffs Moskowitz and Plaintiff Nancy Parris the equal protection of the laws, and to injure them and their property, without limitation, by: (a) making a material misrepresentation of fact to the Alabama Circuit Court to obtain a judgment of over $1,000,000 when the true facts were that the Brooks Defendants, and each of them, purchased their six (6) total shares of IMSO for the total investment of $100,000; (b) proceeding in a AAA arbitration proceeding in Los Angeles, California, against Plaintiff Moskowitz instead of filing a mandatory cross-complaint in the IMSO Lawsuit in violation of Section 426.30 of the Code of Civil Procedure; (c) proffering fraudulent testimony and evidence at the AAA arbitration hearing that that members owning 52.51% of the 169.5 total membership interests (Ex. **D**) in the Company supported the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**), when the true facts were that those members held 44.4% of the 227.5 total membership interests (Ex. **C**) which was not enough to support their actions; (d) filing an action in Los Angeles Superior Court to confirm the arbitration award under color of law when they knew the award was based on the above material misrepresentations of fact (Ex. **L**); and (e) filing an action in California to enforce the fraudulent $1,000,000 "sister state" judgment from the Alabama Lawsuit under color of law, and based thereon conspired to and did file a Notice of Levy under Writ of Execution (Ex. **M**) against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home on June 6, 2023, so it could be sold to satisfy the fraudulent $1,000.000 judgment (Ex. **N**).

50.    As a direct result of the aforesaid conspiracy and the acts and omissions of the Conspiring Defendants, and each of them, as set forth above at length and incorporated herein by this reference as though fully set forth at length, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

51.     As a direct, foreseeable and proximate result of the aforesaid acts and omissions by the Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

52.     In performing the acts hereinbefore alleged, the Conspiring Defendants, and each of them, conspired to act and acted intentionally to injure Plaintiff; and further their conduct was despicable and performed with malice or a willful and conscious disregard of Plaintiff's civil rights such that punitive or exemplary damages are warranted.

53.     By virtue of their conspiracy and acts in furtherance of the conspiracy to unlawfully remove Moskowitz as the executive of IMSO and also to deprive Plaintiffs of their home under color of law in violation of Section 1985, as hereinabove described, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction against the Conspiring Defendants, and each of them, which would prohibit the Conspiring Defendants from enforcing or attempting to enforce the Notice of Levy under Writ of Execution (Ex. **N**) or otherwise attempting to levy on Plaintiffs' assets, or otherwise to enforce or execute on the Alabama judgment against Plaintiffs in any manner, whatsoever, and also to prohibit the enforcement of the arbitration Award (Ex. **K**) that purportedly awarded the Conspiring Defendants control of the Company.

### THIRD CAUSE OF ACTION FOR
### VIOLATION OF SECURITIES ACT OF 1934
***(Plaintiff Moskowitz Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.)***

54.     Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Third Cause of Action, as though fully set forth at length.

55.     The Securities Act of 1934, as amended, includes without limitation, 17 C.F.R. §

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

240.10b-5 Employment of Manipulative and Deceptive Devices, which provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

56.    The Conspiring Defendants, and each of them, conspired to and violated 17 C.F.R. § 240.10b-5 by unlawfully asserting control over the Company as fully explained above. The specific violations include, but are not limited toby way of example and not by way of limitation, by: (a) acting to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (b) purporting to amend the terms of the Membership Agreement without notice to Plaintiff and without a formal  meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (c) failing to obtain the unanimous approval in writing by all of the members of the Management Committee before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended (See Second Amendment; Ex. **B**.); and (d) intentionally overstating the percentage interest owned or controlled by the Conspiring Defendants as described above (Ex. **D**), the actual and true total of 44.4%  was insufficient to prevail under the Agreement.

57.    Further, the Conspiring Defendants, and each of them, also conspired to and did fraudulently injure Plaintiffs and their property, without limitation, by: (a) making a material misrepresentation of fact to the Alabama Circuit Court to obtain a judgment of over $1,000,000 when the true facts were that the Brooks Defendants, and each of them, purchased their six (6) total

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

shares of IMSO for the total investment of $100,000; (b) proceeding in a AAA arbitration proceeding in Los Angeles, California, against Plaintiff Moskowitz instead of filing a mandatory cross-complaint in the IMSO Lawsuit in violation of Section 426.30 of the Code of Civil Procedure; (c) proffering fraudulent testimony and evidence at the AAA arbitration hearing that that members owning 52.51% of the 169.5 total membership interests (Ex. **D**) in the Company supported the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**), when the true facts were that those members held 44.4% of the 227.5 total membership interests (Ex. **C**) which was not enough to support their actions; (d) filing an action in Los Angeles Superior Court to confirm the arbitration award under color of law when they knew the award was based on the above material misrepresentations of fact (Ex. **L**); (e) filing an action in California to enforce the fraudulent $1,000,000 "sister state" judgment from the Alabama Lawsuit under color of law, and based thereon conspired to and did file a Notice of Levy under Writ of Execution (Ex. **M**) against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home on June 6, 2023, so it could be sold to satisfy the fraudulent $1,000.000 judgment (Ex. **N**); and (f) without providing a disclosure statement as mandated by the Securities Exchange Act of 1934, as amended, among other things.

58.    As a proximate result of the violation of 17 C.F.R. § 240.10b-5 other violations of the Securities Act of 1934 and the facts herein alleged, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

59.    As a direct, foreseeable and proximate result of the aforesaid acts and omissions by the Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

60.    In performing the acts hereinbefore alleged, the Conspiring Defendants, and each of them, conspired to act and acted intentionally to injure Plaintiff; and further their conduct was despicable and performed with malice or a willful and conscious disregard of Plaintiff's civil rights such that punitive or exemplary damages are warranted.

61.    By virtue of their conspiracy and acts in furtherance of the conspiracy to unlawfully remove Moskowitz as the executive of IMSO and also to deprive Plaintiffs of their home under color of law, as hereinabove described, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction against the Conspiring Defendants, and each of them, which would prohibit the Conspiring Defendants from enforcing or attempting to enforce the Notice of Levy under Writ of Execution (Ex. **N**) or otherwise attempting to levy on Plaintiffs' assets, or otherwise to enforce or execute on the Alabama judgment against Plaintiffs in any manner, whatsoever, and also to prohibit the enforcement of the arbitration Award (Ex. **K**) that purportedly awarded the Conspiring Defendants control of the Company.

**FOURTH CAUSE OF ACTION FOR**
**VIOLATION OF SECURITIES ACT OF 1933**
**(*Plaintiff Moskowitz Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.*)**

62.    Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Fourth Cause of Action, as though fully set forth at length.

63.    The Securities Act of 1933, as amended, includes without limitation 15 U.S. Code § 77l - Civil Liabilities Arising in Connection with Prospectuses and Communications, which provides, in pertinent part: "(a) In general, Any person who— (1) offers or sells a security in violation of section 77e of this title, or (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

64.    The Conspiring Defendants, and each of them, violated 15 U.S. Code § 77l by making untrue statements in connection with the sale and transfer of securities as hereinabove described, including:  (a) acting to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (b) purporting to amend the terms of the Membership Agreement without notice to Plaintiff and without a formal  meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (c) failing to obtain the unanimous approval in writing by all of the members of the Management Committee before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended (See Second Amendment; Ex. **B**.); and (d) intentionally overstating the percentage interest owned or controlled by the Conspiring Defendants as described above (Ex. **D**), the actual and true total of 44.4%  was insufficient to prevail under the Agreement.

65.    Further, the Conspiring Defendants, and each of them, also conspired to and did violate 15 U.S. Code § 77l, without limitation, by: (a) making a material misrepresentation of fact to the Alabama Circuit Court to obtain a judgment of over $1,000,000 when the true facts were that the Brooks Defendants, and each of them, purchased their six (6) total shares of IMSO for the total investment of $100,000; (b) proceeding in a AAA arbitration proceeding in Los Angeles, California, against Plaintiff Moskowitz instead of filing a mandatory cross-complaint in the IMSO Lawsuit in

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

violation of Section 426.30 of the Code of Civil Procedure; (c) proffering fraudulent testimony and evidence at the AAA arbitration hearing that that members owning 52.51% of the 169.5 total membership interests (Ex. **D**) in the Company supported the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**), when the true facts were that those members held 44.4% of the 227.5 total membership interests (Ex. **C**) which was not enough to support their actions; (d) filing an action in Los Angeles Superior Court to confirm the arbitration award under color of law when they knew the award was based on the above material misrepresentations of fact (Ex. **L**); (e) filing an action in California to enforce the fraudulent $1,000,000 "sister state" judgment from the Alabama Lawsuit under color of law, and based thereon conspired to and did file a Notice of Levy under Writ of Execution (Ex. **M**) against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home on June 6, 2023, so it could be sold to satisfy the fraudulent $1,000.000 judgment (Ex. **N**); and (f) without providing a disclosure statement as mandated by the Securities Exchange Act of 1933, as amended, among other things.

66.     As a proximate result of the violation of 15 U.S. Code § 77l and by other violations of the Securities Act of 1933 and the facts herein alleged, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

67.     As a direct, foreseeable and proximate result of the aforesaid acts and omissions by the Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

68.     In performing the acts hereinbefore alleged, the Conspiring Defendants, and each of them, conspired to act and acted intentionally to injure Plaintiff; and further their conduct was

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

despicable and performed with malice or a willful and conscious disregard of Plaintiff's civil rights such that punitive or exemplary damages are warranted.

69.   By virtue of their conspiracy and acts in furtherance of the conspiracy to unlawfully remove Moskowitz as the executive of IMSO and also to deprive Plaintiffs of their home under color of law as hereinabove described, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction against the Conspiring Defendants, and each of them, which would prohibit the Conspiring Defendants from enforcing or attempting to enforce the Notice of Levy under Writ of Execution (Ex. **N**) or otherwise attempting to levy on Plaintiffs' assets, or otherwise to enforce or execute on the Alabama judgment against Plaintiffs in any manner, whatsoever, and also to prohibit the enforcement of the arbitration Award (Ex. **K**) that purportedly awarded the Conspiring Defendants control of the Company.

## FIFTH CAUSE OF ACTION FOR NEGLIGENCE
### (All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.)

70.   Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Fifth Cause of Action, as though fully set forth at length.

71.   The Conspiring Defendants, and each of them, owed Plaintiffs Moskowitz and Parris a duty of care to refrain from making oral or written material misstatements of fact to any Court or Tribunal in the United States which, if believed and/or adopted by the Court, would injure them in person or property.  In addition, the Conspiring Defendants, and each of them, owed a contractual duty of care to Plaintiffs as set forth in the Membership Agreement, and a general duty of care to Plaintiffs as investors in IMSO to abide by the Membership Agreement, be honest and truthful, and to protect the interests of the other members of the Company from fraud, deceit and other unlawful behavior.

72.   The Conspiring Defendants, and each of them, breached their duty of care to Plaintiffs Moskowitz and Nancy Parris by making untrue statements in connection with the sale

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

and transfer of securities as hereinabove described, including: (a) acting to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (b) purporting to amend the terms of the Membership Agreement without notice to Plaintiff and without a formal meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (c) failing to obtain the unanimous approval in writing by all of the members of the Management Committee before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended (See Second Amendment; Ex. **B**.); and (d) intentionally overstating the percentage interest owned or controlled by the Conspiring Defendants as described above (Ex. **D**), the actual and true total of 44.4% was insufficient to prevail under the Agreement.

73.    Further, the Conspiring Defendants, and each of them, also breached their duty of care by: (a) making a material misrepresentation of fact to the Alabama Circuit Court to obtain a judgment of over $1,000,000 when the true facts were that the Brooks Defendants, and each of them, purchased their six (6) total shares of IMSO for the total investment of $100,000 from Turner and DOES 1 through 20, and each of them; (b) proceeding in a AAA arbitration proceeding in Los Angeles, California, against Plaintiff Moskowitz instead of filing a mandatory cross-complaint in the IMSO Lawsuit in violation of Section 426.30 of the Code of Civil Procedure; (c) proffering fraudulent testimony and evidence at the AAA arbitration hearing that that members owning 52.51% of the 169.5 total membership interests (Ex. **D**) in the Company supported the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**), when the true facts were that those members held 44.4% of the 227.5 total membership interests (Ex. **C**) which was not enough to support their actions; (d) filing an action in Los Angeles Superior Court to confirm the arbitration award under color of law when they knew the award was based on the above material misrepresentations of fact (Ex. **L**); (e) filing an action in California to enforce the fraudulent $1,000,000 "sister state" judgment from the Alabama Lawsuit under color of law, and based thereon conspired to and did file a Notice of Levy under Writ of

Execution (Ex. **M**) against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home on June 6, 2023, so it could be sold to satisfy the fraudulent $1,000.000 judgment (Ex. **N**); and (f) without providing a disclosure statement as mandated by the Securities Exchange Act of 1933, as amended, among other things.

74.    As a proximate result of the negligence, breach of duty and the facts hereinabove alleged, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

75.    As a direct, foreseeable and proximate result of the aforesaid acts and omissions by the Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.)

76.    Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Sixth Cause of Action, as though fully set forth at length.

77.    The Conspiring Defendants, and each of them, knew that their acts and actions to remove Moskowitz as the executive/managing member of the Company without notice, meeting, or supported by a Majority Interest would be in violation of the express terms of the Membership Agreement, as amended, and intended to cause Plaintiffs severe emotional distress.    The Conspiring Defendants, and each of them, also knew that they were misrepresenting their percentage ownership to obtain a tainted and fraudulent arbitration Award which they are now attempting to unlawfully enforce against the Company, thereby intending that Plaintiff would incur severe emotional distress.    The most despicable conduct, however, is the aforesaid fraudulent

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

$1,000,000 Alabama judgment which is being used to force the sale of Plaintiff Moskowitz and Plaintiff Nancy Parris home, which was intended to cause the most severe emotional distress including panic, pain, depression, suffering, extreme stress and worsening of existing medical conditions.

78.    These acts were extreme and outrageous.  In taking the acts and actions described hereinabove, the Conspiring Defendants, and each of them, acted with reckless disregard of the probability that the elderly Plaintiffs, Moskowitz and Nancy Parris, would suffer severe emotional distress as a result. Plaintiffs, in fact, were physically present when they found the Notice of Levy and Writ of Execution posted on their house, and both suffered severe and extreme mental, physical and emotional distress as a result.

79.    As a proximate result of the extreme and outrageous behavior of the Conspiring Defendants, and each of them, and on the facts hereinabove alleged, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

80.    As a further direct, foreseeable and proximate result of the aforesaid extreme and outrageous conduct and intentional infliction of emotional distress by Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, severe and extreme mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

81.    In performing the extreme and outrageous acts hereinbefore alleged, the Conspiring Defendants, and each of them, acted intentionally to injure Plaintiff and cause severe emotional distress; and further their conduct was despicable and performed with malice or a willful and conscious disregard of Plaintiff's rights such that punitive or exemplary damages are warranted.

### SEVENTH CAUSE OF ACTION FOR NEGLIGENT

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

## INFLICTION OF EMOTIONAL DISTRESS
### (All Plaintiffs Against the Conspiring Defendants and
### Does 1 Through 20, and Each of Them.)

82.    Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Seventh Cause of Action, as though fully set forth at length.

83.    The Conspiring Defendants, and each of them, should have known that their acts and actions to remove Moskowitz as the executive/managing member of the Company without notice, meeting, or supported by a Majority Interest would be in violation of the express terms of the Membership Agreement, as amended, and would to cause Plaintiffs severe emotional distress. The Conspiring Defendants, and each of them, also should have known that they were misrepresenting their percentage ownership to obtain a tainted and fraudulent arbitration Award which they are now attempting to unlawfully enforce against the Company, thereby causing Plaintiffs severe emotional distress.   The most despicable conduct, however, is the aforesaid fraudulent $1,000,000 Alabama judgment which is being used to force the sale of Plaintiff Moskowitz and Plaintiff Nancy Parris home, which they should have known would cause the most severe emotional distress including panic, pain, depression, suffering, extreme stress and worsening of existing medical conditions.

84.    These acts were extreme and outrageous.  In taking the acts and actions described hereinabove, the Conspiring Defendants, and each of them, should have known they acted with reckless disregard of the probability that the elderly Plaintiffs, Moskowitz and Nancy Parris, would suffer severe emotional distress as a result. Plaintiffs, in fact, were physically present when they found the Notice of Levy and Writ of Execution posted on their house, and both suffered severe and extreme mental, physical and emotional distress as a result.

85.    As a proximate result of the extreme and outrageous behavior of the Conspiring Defendants, and each of them, and on the facts hereinabove alleged, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

86.    As a further direct, foreseeable and proximate result of the aforesaid extreme and outrageous conduct and negligent infliction of emotional distress by Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, severe and extreme mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

### EIGHTH CAUSE OF ACTION FOR BREACH OF CONTRACT
***(All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.)***

87.    Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Eighth Cause of Action, as though fully set forth at length.

88.    IMSO is a limited liability company owned by its members and governed by a written Membership Agreement, as amended. (Ex. **A**.) The Conspiring Defendants, and each of them, along with Plaintiff Moskowitz and others, were members of IMSO by virtue of the ownership and/or control of IMSO membership units acquired pursuant to the express written provisions of the Membership Agreement, as amended.  All members are contractually obligated to abide by the express terms of the Membership Agreement, as amended, in all matters and undertakings.

89.    The Conspiring Defendants, and each of them, breached the Membership Agreement in their efforts to remove Moskowitz as executive/managing member as hereinabove described, including without limitation, by:  (a) acting to remove Plaintiff Moskowitz as Managing Member without cause, in violation of Section 5.2.3 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (b) purporting to amend the terms of the Membership Agreement without notice to Plaintiff and without a formal meeting, in violation of Section 5.2.6 of the Membership Agreement (Ex. **A**), as amended (See Second Amendment; Ex. **B**); (c) failing to obtain the unanimous approval in writing by all of the members of the Management Committee

before taking action without a meeting, as required under Section 5.2.6 of the Agreement, as amended (See Second Amendment; Ex. **B**.); and (d) intentionally overstating the percentage interest owned or controlled by the Conspiring Defendants as described above (Ex. **D**), the actual and true total of 44.4% was insufficient to prevail under the Agreement.

90.     As a proximate result of the breach of contract and the facts hereinabove alleged, Plaintiff Moskowitz has been unlawfully removed as the managing member, and has suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

91.     As a direct, foreseeable and proximate result of the aforesaid breaches of contract by the Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

## NINTH CAUSE OF ACTION FOR FRAUD AND DECEIT
### (*All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.*)

92.     Plaintiffs incorporate by this reference paragraphs 1 through 36 of this complaint into the Ninth Cause of Action, as though fully set forth at length.

93.     Civil Code § 1709 provides that, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Section 1710 explains that a deceit, within the meaning of the last section, is either: "1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4.

A promise, made without any intention of performing it."

94.    The Conspiring Defendants, and each of them, engaged in fraud and deceit in violation of Sections 1709 and 1710, above, without limitation, by: (a) making material misrepresentations of fact to the Alabama Circuit Court to obtain a judgment of over $1,000,000 when the true facts were that the Brooks Defendants, and each of them, purchased their six (6) total shares of IMSO for the total investment of $100,000; (b) proceeding in a AAA arbitration proceeding in Los Angeles, California, against Plaintiff Moskowitz instead of filing a mandatory cross-complaint in the IMSO Lawsuit in violation of Section 426.30 of the Code of Civil Procedure; (c) proffering untrue testimony and false evidence at the AAA arbitration hearing that that members owning 52.51% of the 169.5 total membership interests (Ex. **D**) in the Company supported the Resolution (Ex. **E**) and the Fifth Amendment (Ex. **F**), when the true facts were that those members held 44.4% of the 227.5 total membership interests (Ex. **C**) which was not enough to support their actions; (d) filing an action in Los Angeles Superior Court to confirm the arbitration award under color of law when they knew the award was based on the above material misrepresentations of fact (Ex. **L**); and (e) filing an action in California to enforce the fraudulent $1,000,000+ "sister state" judgment from the Alabama Lawsuit under color of law, and based thereon conspired to and did file a Notice of Levy under Writ of Execution (Ex. **M**) against Plaintiff Moskowitz and his wife, Plaintiff Nancy Parris, seeking to force them out of their home on June 6, 2023, so it could be sold to satisfy the fraudulent $1,000.000 judgment (Ex. **N**).

95.    As a proximate result of the fraud and deceit of the Conspiring Defendants, and each of them, and on the facts hereinabove alleged, Plaintiff Moskowitz and Plaintiff Parris have suffered economic injury, including general, special and incidental/coincidental damages in an amount according to proof at trial.

96.    As a further direct, foreseeable and proximate result of the aforesaid fraud and deceit by Conspiring Defendants, and each of them, Plaintiffs have suffered and continue to suffer

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

noneconomic damages including, without limitation, pain, discomfort, depression, humiliation, embarrassment, severe and extreme mental and emotional distress and discomfort, and extreme and disabling stress which worsens Plaintiffs' various medical conditions, all to their damage in an amount according to proof at trial.

97.    In performing the fraudulent acts hereinbefore alleged, the Conspiring Defendants, and each of them, acted intentionally to injure Plaintiff and cause severe emotional distress; and further their conduct was fraudulent, despicable and performed with malice or a willful and conscious disregard of Plaintiff's rights such that punitive or exemplary damages are warranted.

### TENTH CAUSE OF ACTION FOR DECLARATORY RELIEF
*(All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.)*

98.    Plaintiffs incorporate by this reference paragraphs 1 through 97 of this complaint into the Tenth Cause of Action, as though fully set forth at length.

99.    As more fully described above, the Conspiring Defendants, and each of them, intentionally and/or recklessly breached the Membership Agreement and engaged in other intentional and negligent conduct as described at length, above, by conspiring, authorizing, directing, and actively participating in the wrongful conduct alleged above.

100.    In taking the actions described herein, the Conspiring Defendants, and each of them, also breached their duties of care, loyalty, accountability, and disclosure to Plaintiff Moskowitz.

101.    An actual controversy has arisen and now exists between Plaintiff and the Conspiring Defendants, and each of them, concerning their respective rights and duties with respect to IMSO. Among other things, Plaintiffs contend that the removal of Moskowitz as the managing member is null and void, and that any and all acts and actions undertaken by the Conspiring Defendants, and each of them purportedly on behalf of the Company, including without limitation, the Resolution and the Fifth Amendment, are not binding on the Company and are also null and void. Plaintiff is informed and believes and based thereon alleges that the Conspiring

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Defendants, and each of them dispute these contentions and maintains that the allegations as set forth above are untrue, misleading and/or inaccurate.

102.    Plaintiff desires a judicial determination of its rights and duties, and a declaration as to the validity of the above-described actions and transactions taken by the Conspiring Defendants, and each of them, as described above.

103.    A judicial declaration is necessary and appropriate at this time under the circumstances in order to address and define the parties' respective rights and obligations to IMSO and the other members as detailed above and, among other things, to conclusively establish the nature and extent of the percentage membership interest in IMSO owned by each member of IMSO.

## ELEVENTH CAUSE OF ACTION FOR ACCOUNTING
### (*All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.*)

104.    Plaintiffs incorporate by this reference paragraphs 1 through 103 of this complaint into the Eleventh Cause of Action, as though fully set forth at length.

105.    The Conspiring Defendants, and each of them, were members of the Company LLC, and/or its managers and/or executive officers of IMSO, were and at all relevant times are each a fiduciary of IMSO and therefore owed IMSO and its members a duty of care to conduct Company business and manage its assets loyally, faithfully, carefully, diligently, and prudently.

106.    As a result, the Conspiring Defendants, and each of them owe to the Company a duty to act in such a way so as not to harm IMSO, including by way of example and not by way of limitation, a duty to care for and protect in all particulars the Company's financial interests and property in connection with the operations of IMSO, and to provide periodic statements of accounts of all moneys and property from those operations.

107.    The Conspiring Defendants, and each of them, have undertaken numerous transactions on behalf of IMSO, encumbered the assets owned by IMSO, filed erroneous tax documents, and hypothecated legal claims owned by the Company, all of which is described in

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

detail above.  The amount of money expended by the Conspiring Defendants, and each of them, is unknown to Plaintiffs at this time, and can not be truly ascertained without an accounting of the accounts, receipts, debts and disbursements of the aforementioned operations.

108.    Plaintiff demanded that the Conspiring Defendants, and each of them account for the aforementioned transactions, receipts, loans and disbursements, but has not received a response.  The Conspiring Defendants, and each of them, have failed and refused to provide any accounting of any kind, whatsoever, such that all financial issues regarding the operation may be resolved, and continues to engage in the wrongful conduct as set forth above.

## TWELFTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF
### (All Plaintiffs Against the Conspiring Defendants and Does 1 Through 20, and Each of Them.)

109.    Plaintiffs incorporate by this reference paragraphs 1 through 107 of this complaint into the Twelfth Cause of Action, as though fully set forth at length.

110.    By virtue of their conspiracy and acts in furtherance of the conspiracy to unlawfully remove Moskowitz as the executive of IMSO and also to deprive Plaintiffs of their home under color of law in violation of Federal and State law, as hereinabove described, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction against the Conspiring Defendants, and each of them, which would prohibit the Conspiring Defendants from enforcing or attempting to enforce the Notice of Levy under Writ of Execution (Ex. **N**) or otherwise attempting to levy on Plaintiffs' assets, or otherwise to enforce or execute on the Alabama judgment against Plaintiffs in any manner, whatsoever, and also to prohibit the enforcement of the arbitration Award (Ex. **K**) that purportedly awarded the Conspiring Defendants control of the Company.

//

//

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

1.    For actual damages;

2.    For statutory damages;

3.    For special damages in amount to be proven at trial;

4.    For general damages in an amount to be proven at trial;

5.    For economic loss in an amount to be proven at trial;

6.    For noneconomic loss in an amount to be proven at trial;

7.    For punitive damages (per statute CCC § 1942.5, 1788 et seq)

8.    For treble damages (per statute CCC §3345)

9.    For pre- and post-judgment interest;

10.    Reasonable statutory attorney fees, litigation expenses and costs of suit pursuant to, among other statutes, 42 U.S.C. § 12205; and Cal. Civ. Code§§ 52;

11.    For a temporary restraining order, preliminary injunction and permanent injunction against the Conspiring Defendants, and each of them, enjoining the Conspiring Defendants from enforcing or attempting to enforce the Notice of Levy under Writ of Execution (Ex. **N**) or otherwise attempting to levy, enforce or execute on the Alabama judgment against Plaintiffs in any manner, whatsoever, and enjoining the enforcement of the arbitration Award (Ex. **K**); and

12.    For such other and further relief as the Court deems just and proper.

DATED:  May 25, 2023                    **RGLAWYERS LLP**


By:*/S/ Solomon Gresen*
Solomon E. Gresen, Esq.
Attorney for Plaintiffs

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

2

### <u>DEMAND FOR JURY TRIAL</u>

3          Plaintiffs hereby demand a jury trial.

4

5    DATED:   May 25, 2023                    **RGLAWYERS LLP**

6

7                                      By:<u>*/S/ Solomon Gresen*</u>
                                       Solomon E. Gresen, Esq.
8                                      Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**